McKinney J.,
delivered the opinion of the court.
The main question in this cause arises upon the construction of the residuary clause of Joseph Donohoo’s last will and testament.
The testator departed this life in March, 1842. Elis will— which was duly made and published in May 1840 — among various bequests, and devises of personal and real property to others, contains the following devise, namely: “I give and bequeath to my brother, Henry Donohoo, my Savannah land, all, except the Borden part, which is eighty acres.” Said Will contains a residuary clause, which is in the following words : “Also, I give my wife, Rebecca C. Donohoo, after my just *120 debts are paid, the residue of my property, both real and personal, and all other effects, not herein bequeathed and given to others, for her to have, and for her use and benefit.” After the making of said will, and some twelve' months before the death of the testator, to wit: on the 12th day of March, 1841, the latter contracted to sell said “Savannah land,” mentioned in the foregoing devise, to Charles K. Gillespie, for the consideration of $3477 50, and executed a bond, binding himself to convey said land to said C. K. Gillespie, by “general warrantee deed,” upon payment of said sum of money, for which the latter executed to hi'm his obligation.
At the testator’s death, the purchase money of said land remained wholly unpaid, and no disposition whatever was made by him of said obligation, or of the money due thereon.
The executors afterwards sued and recovered j udgment for the amount due upon said obligation. Subsequent to the recovery of said judgment, Gillespie transferred and assigned the bond, executed by the testator for title to said land, to John Henderson; and on the same day, (4th January, 1844,) the widow of the testator, (who had intermarried with the defendant, F. W. Lea,) jointly with her husband, executed a conveyance to said Henderson for the tract of land in question, for the consideration of $3200 00, to them in hand paid by him; no part of the purchase money ever having been paid by Gillespie.
Upon these facts, two propositions have been assumed by the counsel for the complainants in the argument here.
First: That the mere contract of sale, under the circumstances, did not work a revocation of the devise of the land in question to Henry Donohoo. And, secondly, that even if it had that effect, that the obligation taken from Gillespie, or the money due thereon, would not pass to the widow under the residuary clause of the will; but that as to this fund the testator must be held to have died intestate; and that the *121 same should be distributed to the next of kin, as sought by complainants’ bill.
Both these propositions are wholly untenable. According to the established doctrine in this country, and likewise in England, (prior to the statute, 1 Vic. 26, which has introduced a material alteration of the law upon this subject,) it is essential to the validity of a devise of real estate, not only that the testator should be seised thereof, at the time of making the will, but, likewise, that he should continue to be so seised, without interruption, until his death. Hence it is held, that any alteration of the estate, or interest of the testator in the lands devised, by the subsequent act of the testator, is an implied revocation of the will pro tanto, on the ground, mainly, of its being evidence of a change of the testator’s mind. A sale and conveyance of the estate devised operates, of necessity, as a revocation, both at law and in equity, for, as the testator was not seised of the estate at his death, the will could have no effect upon it. And it is equally well established, that a valid agreement, or covenant to convey, such as a court of equity would enforce specifically, will in equity, though perhaps not at law, operate as a revocation of the estate previously devised. Such contract of sale, or covenant to convey, being binding on the testator, and entitling the parties to a specific enforcement in equity, the estate, from the time of the contract, is regarded as the property of the vendee; and, therefore, a valid contract to convey is as much a revocation, in equity, of the land previously devised, as a legal conveyance thereof by the testator would be at law. Jarman on Wills, 1 vol. chap. 7, sec. 3; 4 Kent’s Com. 528; 7 Johns. Chan. R., 258-267, and cases there cited.
The law as to the revocation of wills, is the same in courts of law and equity. Where a devise of real estate has once been revoked by a valid executory contract of sale, or other *122 wise, either expressly or impliedly, it can no more become operative again, without republication, in equity, than at law.
It may be true, that where an implied revocation, takes place by a mere executory contract to sell the devised estate, and the testator dies without having made a legal conveyance to the purchaser, that the devise remains in force as to the naked legal estate — that being all the interest which remained in the testator at the time of his death. But further than this, it is clear, the devise is rendered wholly inoperative and nugatory. As between the devisee and personal representative, or as between the devisee and residuary legatee, the conversion is completely effected by the contract of sale. And although it be admitted that the devisee takes the mere legal title, yet it is clear that the purchase money goes to, and constitutes part of, the testator’s personal estate, and the de-visee can have no claim to the same. Jarman on Wills, 1 vol., 147.
The remaining question is, does the purchase money of the land devised, being part of the testator’s personal estate, pass to the widow, under the residuary clause?
This question is too clear to admit of any discussion.
A residuary bequest, generally speaking, operates upon all the personal estate of which the testator is possessed at the time of his death. It was otherwise, by the common law, as to residuary devise, because the testator could only devise the real estate to which he was actually entitled at the time of making his will. Hence, a residuary devise, however general in its terms, is regarded as, in its nature, specific, being merely a specific disposition of the lands not before expressed to be given by the will. 1 Jarman on Wills, 588.
How far this' principle of the common law, (which has recently been modified in England,) may have been altered if not entirely repealed — by the act of 1842, chap. 169, sec. 4 *123 making the devise operate upon all the real estate of which the testator died seised, though in part acquired after making his will, is a question which need not, in the present case, be decided.
It need only be further remarked, that the residuary clause is sufficiently explicit and comprehensive in its terms to embrace the proceeds of the sale of the land in question; and there is nothing in the case either to require, or justify, a different or more restricted construction of the words used therein.
As to the effect of the conveyance from Lea and wife to Henderson, and whether operative for any purpose, we are not called upon to express any opinion in this ease.
There is no error in the decree of the Chancellor, and it will be affirmed.